# EXHIBIT B

ed in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
/elope: 3501017
/iewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 2 of 62 PageID #: 112

**NOTICE OF MOTION**
**FEBRUARY 22, 2022**
**2:00 pm**
**Kent Formal and Special Cause Calendar**
**Justice Licht**

**STATE OF RHODE ISLAND**                    **SUPERIOR COURT**
**KENT, SC**

**RAYMOND BRADBURY**
**HEATHER BRADBURY**

             **Vs**

**PHH MORTGAGE CORPORATION**
**DEUTSCHE BANK AS TRUSTE FOR**
**GSAMP TRUST 2005-WMC1**

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs, by their attorney, move this Court as follows:

1.    Plaintiffs are residents of the State of Rhode Island with an address of

61 Lafayette Street, West Warwick, Rhode Island.  The own said real estate

located at 61 Lafayette Street, West Warwick, Rhode Island.

2.    Plaintiffs executed a  note to WMC Mortgage Corp on June 9, 2005.

3.    A copy is attached as Exhibit A.

4.    As security for this note Plaintiffs executed a document referenced as

a mortgage to Mortgage Electronic Registration Systems, Inc.("MERS") as

Nominee for WMC Mortgage Corp June 9, 2005.

1

d in Kent County Superior Court
ımitted: 2/22/2022 1:42 PM
/elope: 3501017
/iewer: Rhiannon W.

5.      A copy is attached as Exhibit B.


6.      This document referenced as a mortgage does not contain a grant to

MERS  the Statutory Power of Sale.

7.      In this document Plaintiffs did not  mortgage, grant and convey to

MERS, (solely as nominee for Lender and Lender's successors and assigns)

and to the successors and assigns of MERS, our property with Mortgage

Covenants upon the Statutory Condition and with the Statutory Power of

Sale..

8.      Instead in this document Plaintiffs merely mortgage, granted and

conveyed to MERS, (solely as nominee for Lender and Lender's successors

and assigns) and to the successors and assigns of MERS, their home.

9.      The statutory condition normally contained in a mortgage is

referenced in R.I.G.L. 34-11-21which states

**§ 34-11-21.  Statutory mortgage condition.**

The following condition shall be known as the "statutory condition", and may

be incorporated in any mortgage by reference:


(Condition)


2

ed in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
/elope: 3501017
/iewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 4 of 62 PageID #: 114

Provided, nevertheless, and this conveyance is made upon the express condition, that if the mortgagor or his or her heirs, executors, administrators or assigns shall pay to the mortgagee or his or her heirs, executors, administrators, or assigns the principal and interest of that certain promissory note bearing even date with this deed and secured by this deed, and shall perform every other obligation secured by this deed, at the time provided in the promissory note or in this deed, and shall also pay all taxes and assessments of every kind levied or assessed upon or in respect of the mortgaged premises, then this deed, as also the promissory note, shall become and be absolutely void to all intents and purposes whatsoever.

10.     In this  mortgage Plaintiffs did not convey the property to MERS upon the statutory condition and with the statutory power of sale.

11.     Defendant,  Deutsche Bank National Trust Company as trustee for GSAMP Trust 2005-WPC1. ("Deutsche Bank") claims to own Plaintiffs' mortgage and note.

12.     PHH Mortgage Corporation("PHH") is a New Jersey Corporation.

13.     PHH  is a debt collector and asserts that it is the loan servicer for our mortgage.

14.     The primary business of PHH is the collection of debts.

15.     PHH regularly collects debts for mortgagees and other entities.

d in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
/elope: 3501017
/iewer: Rhiannon W.

16.    When PHH commenced servicing of this mortgage loan, the

mortgage loan was delinquent.

17.    When Ocwen Loan Servicing, LLC ("Ocwen") commenced servicing

of our mortgage loan, the mortgage loan was delinquent.

18.    Ocwen merged with PHH so that PHH became the surviving entity,

which serviced the Plaintiff's loan.

19.    Orlans PC ("Orlans") on December 30, 2021scheduled a foreclosure

sale for our home on  March 1, 2022, pursuant to R.I.G.L. 34-27-4.

20.    A copy of this notice of sale is attached as Exhibit C.

13.    This Notice claims that the foreclosure sale will occur pursuant to

power of sale and by entry.

14.    No person signed this Notice on behalf of either Orlans or Deutsche

Bank.

15.    Neither Orlans, PHH, Ocwen or Deutsche Bank have not sent

Plaintiffs a default notice, which strictly complied with the provisions of

paragraph 22 of our mortgage.

16.    Orlans on behalf of Deutsche Bank mailed Plaintiffs what purports to

be an acceleration notice dated October 22, 2018

17.    A copy is attached as Exhibit D.

4

id in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
relope: 3501017
viewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 6 of 62 PageID #: 116

18.     This is the only purported acceleration notice that Plaintiffs have received.

19.     Ocwen mailed Plaintiffs a letter dated April 30, 2018, which it claimed to be a default notice.

20.     A copy is attached as Exhibit D.

21.     This letter did not comply with Paragraph 22 of the mortgage.

22. Plaintiffs were not provided a specific date to cure, only that they had to cure on or before June 6, 2018, which is not a specific date.

23.     However this letter did not specify a particular date for the cure date. Instead it stated:

    In order to cure the default, payment for the entire total amount past due plus any amount(s) that become(s) due in the interim must be received on or before 06/06/2018.

24.     The promissory note in paragraph 3 defines monthly payments as payments of principal and interest only.

25.     Paragraph 7(B) defines default as failure to make payments of principal and interest.

26.     Paragraph 7C) of the note provides that if I am in default, the lender may send me a notice to pay the overdue amount by a certain date, at least thirty days from the date after which the notice is mailed to me or delivered by other means.

d in Kent County Superior Court
mitted: 2/22/2022 1:42 PM
elope: 3501017
iewer: Rhiannon W.
Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 7 of 62 PageID #: 117

27.    The note provides that if I do not cure the Note Holder may require me to pay immediately the full amount of Principal and all the interest due.

28.    Paragraph 7(E) of the note indicates that if Plaintiffs have been required to pay immediately in full, which is acceleration, they may be required to pay fees and expenses.

29.    Thus 7(E) provides that fees and expenses may be charged only if the lender has accelerated the note.

30.    The purported default letter did not strictly comply with the note or the mortgage.

31.    It did not tell Plaintifs that the right to reinstate would terminate five days before any sale date.

32.    It deceptively told Plaintiffs that they we owed $103,751.23. However due to miscalculations of Ocwen Loan Servicing, LLC, this amount was not accurate.

33.    It deceptively did not provide Plaintiffs an accurate amount of default and told them that they had to contact Ocwen to obtain the actual amount due to reinstate not cure the default.

34.    This letter deceptively told Plaintiffs about fees and expenses which would be required to reinstate after acceleration.

6

d in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
elope: 3501017
iewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 8 of 62 PageID #: 118

35.     However the note had not been accelerated on April 30, 2018 and

there was no basis for discussing costs to reinstate in this letter.

36.     When Ocwen claims to have accelerated the note on October 22, 2018

in Exhibit D, Ocwen's attorney, Orlans deceptively told Plaintiffs, contrary

to the terms of the mortgage, that:

You  may have the right to reinstate the Mortgage Loan  . .

Any right you may have to reinstate your Mortgage Loan

37.     Neither of these letters strictly complied with the  terms of the

mortgage.

38.     A   Notice of Foreclosure Counseling was not provided to

Plaintiffspursuant to R.I.G.L. § 34-27-3.1 at least 45 days prior to this

initiation of the foreclosure sale on December 30, 2021.

39.     R.I.G.L § 34-27-3.1 states:


### § 34-27-3.1. Foreclosure counseling.

(a) No less than forty-five (45) days prior to initiating **any foreclosure** of real

estate pursuant to subsection 34-27-4(b), the **mortgagee shall provide to an**

**individual consumer mortgagor** written notice of default and the mortgagee's

right to foreclose by first class mail at the address of the real estate and, if

different, at the address designated by the mortgagor by written notice to the

mortgagee as the mortgagor's address for receipt of notices.

d in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
velope: 3501017
/iewer: Rhiannon W.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

d in Kent County Superior Court
mitted: 2/22/2022 1:42 PM
/elope: 3501017
/iewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 10 of 62 PageID #: 120

40.     The statute provides that failure to provide Plaintiffs this notice at least forty five days before initiating any foreclosure by mailing a Notice of Sale will render the sale void.

41.     Orlans on behalf of PHH and Deutsche Bank had mailed Plaintiffs a previous Notice of Sale dated June 28, 2021 scheduling a sale for August 19, 2021.

37.     While Plaintiff had been provided a Notice of Foreclosure Counseling before a prior foreclosure sale, they were never provided a Notice of Foreclosure counseling in regard to this Notice of Sale at least 45 days prior to December 30, 2021.

39.     The failure of Deutsche Bank to strictly comply with the terms of the note and mortgage and R.I.G.L 34-27-3.1 renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability to conduct this foreclosure.

40. Plaintiffs have a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

41.     The failure of the Defendants to comply with the terms of the mortgage and note and R.I.G.L 34-27-3.1 renders void any attempt to

9

commence the alleged foreclosure by Statutory Power of Sale, without

having the statutory ability or the contractual ability  to exercise the statutory

power of sale

42.    Plaintiffs live in this property, as their principal residence.

43.    Plaintiffs emailed a complete loss mitigation application to PHH as

per its prior requests on January 21, 2022, which was more than thirty nine

days prior to the purported sale date of March 1, 2022.

44.    12 CFR 1024.41 provides that the loan servicer must consider

Plaintiffs for review of a loss mitigation application if it receives a complete

application at least 37 days prior to  a sale date.

45.    PHH advertised this purported sale after it received Plaintiffs'

complete loss mitigation application.

46.    These facts demonstrate that Plaintiffs have a substantial likelihood of

success.  Likewise a foreclosure of their property by a party not entitled to

foreclose on the property will cause them  irreparable harm, which hardship

is greater than any hardship, which may be claimed by defendants.

47.    Such relief sought by them will not disserve the public interest if

imposed.

48.    Plaintiffs have a substantial likelihood of success in the pending

action, would otherwise suffer irreparable harm and can claim the greater

d in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
/elope: 3501017
/iewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 12 of 62 PageID #: 122

hardship in the absence of an order, which will not disserve the public interest if imposed.

49.    Notice of this Motion has been emailed to Orlans PC on behalf of Defendants and the Plaintiff's intent to seek injunctive relief has been provided to Orlans on behalf of PHH and Deutsche Bank  by Plaintiffs attorney.

50.    Plaintiffs have incurred legal fees for the prosecution of this action.

WHEREFORE, Plaintiff demands that this Court:

a.    Grant a Temporary Restraining Order and Preliminary Injunction Restraining and Enjoining  Deutsche Bank as Trustee, PHH Mortgage Corporation.  or any other entity acting on their behalf from conducting, advertising or continuing a  foreclosure  sale at 71 Lafayette street, West Warwick, Rhode Island on March 1, 2022 at  any timeor at any other time pending a hearing on a Preliminary Injunction.

b.    Grant a  Preliminary Injunction  Enjoining  Deutsche Bank as Trustee, PHH Mortgage Corporation.  or any other entity acting on their behalf from conducting, advertising or continuing a  foreclosure  sale at 71 Lafayette Street, West Warwick, Rhode Island until  further Order of this Court.

11

d in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
elope: 3501017
iewer: Rhiannon W.

c.    Award the Plaintiffs actual damages and compensatory

damages and legal fees and costs against PHH for scheduling a foreclosure

without complying the terms of the mortgage and the provisions of R.I.G.L

34-27-3.1

d.    Grant all other just and proper relief.



RAYMOND BRADBURY
HEATHER BRADBURY
By their attorney,


February 22, 2022                    /s/ John B. Ennis
                                     JOHN B. ENNIS, ESQ. #2135
                                     1200 Reservoir Avenue
                                     Cranston, Rhode Island 02920
                                     (401) 943-9230
                                     Jbelaw75@gmail.com

12

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 14 of 62 PageID #: 124

**STATE OF RHODE ISLAND**                    **SUPERIOR COURT**
**KENT, SC**

**RAYMOND BRADBURY**
**HEATHER BRADBURY**

          **Vs**

**PHH MORTGAGE CORPORATION**
**DEUTSCHE BANK AS TRUSTE FOR**
**GSAMP TRUST 2005-WMC1**

## AFFIDAVIT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Raymond Bradbury, being duly sworn, states the following:

1.     I and my wife, Heather Bradbury are residents of the State of Rhode Island with an address of 61 Lafayette Street, West Warwick, Rhode Island. We own said real estate located at 61 Lafayette Street, West Warwick, Rhode Island.

2.     We executed a  note to WMC Mortgage Corp on June 9, 2005.

3.     A copy is attached as Exhibit A.

4.     As security for this note we executed a document referenced as a mortgage to Mortgage Electronic Registration Systems, Inc.("MERS") as Nominee for WMC Mortgage Corp June 9, 2005.

5.     A copy is attached as Exhibit B.

1

6.    This document referenced as a mortgage does not contain a grant to MERS  of the Statutory Power of Sale.

7.    In this document we did not  mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, our property with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale..

8.    Instead in this document we merely mortgage, granted and conveyed to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property, which we owned.

9.    The statutory condition normally contained in a mortgage is referenced in R.I.G.L. 34-11-21 which states:

**§ 34-11-21.  Statutory mortgage condition.**

The following condition shall be known as the "statutory condition", and may be incorporated in any mortgage by reference:

(Condition)

Provided, nevertheless, and this conveyance is made upon the express condition, that if the mortgagor or his or her heirs, executors, administrators or assigns shall pay to the mortgagee or his or her heirs, executors, administrators, or assigns the principal and interest of that certain promissory note bearing

2

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

even date with this deed and secured by this deed, and shall perform every other obligation secured by this deed, at the time provided in the promissory note or in this deed, and shall also pay all taxes and assessments of every kind levied or assessed upon or in respect of the mortgaged premises, then this deed, as also the promissory note, shall become and be absolutely void to all intents and purposes whatsoever.

10.    In our mortgage we did not convey the property to MERS upon the statutory condition and with the statutory power of sale.

11.    Defendant, Deutsche Bank National Trust Company as trustee for GSAMP Trust 2005-WPC1. ("Deutsche Bank") claims to own our mortgage and note.

12.    PHH Mortgage Corporation("PHH") is a Delaware Corporation.

13.    PHH is a debt collector and asserts that it is the loan servicer for our mortgage.

14.    The primary business of PHH is the collection of debts.

15.    PHH regularly collects debts for mortgagees and other entities.

16.    When PHH commenced servicing of our mortgage loan, the mortgage loan was delinquent.

17.    When Ocwen Loan Servicing, LLC ("Ocwen") commenced servicing of our mortgage loan, the mortgage loan was delinquent.

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

18. Ocwen merged with PHH so that PHH became the surviving entity, which serviced our loan.

19. Orlans PC ("Orlans") on December 30, 2021 scheduled a foreclosure sale for our home on March 1, 2022, pursuant to R.I.G.L. 34-27-4.

20. A copy of this notice of sale is attached as Exhibit C.

13. This Notice claims that the foreclosure sale will occur pursuant to power of sale and by entry.

14. No person signed this Notice on behalf of either Orlans or Deutsche Bank.

15. Neither Orlans, PHH, Ocwen or Deutsche Bank have not sent us a default notice, which strictly complied with the provisions of paragraph 22 of our mortgage.

16. Orlans on behalf of Deutsche Bank mailed us what purports to be an acceleration notice dated October 22, 2018.

17. A copy is attached as Exhibit D.

18. This is the only purported acceleration notice that we have received.

19. Ocwen mailed us a letter dated April 30, 2018, which it claimed to be a default notice.

20. A copy is attached as Exhibit D.

21. This letter did not comply with Paragraph 22 of the mortgage.

4

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

22.    We were not provided a specific date to cure, only that we had to cure on or before June 6, 2018, which is not a specific date.

23.    However this letter did not specify a particular date for the cure date. Instead it stated:

In order to cure the default, payment for the entire total amount past due plus any amount(s) that become(s) due in the interim must be received on or before 06/06/2018.

24.    The promissory note in paragraph 3 defines monthly payments as payments of principal and interest only.

25.    Paragraph 7(B) defines default as failure to make payments of principal and interest.

26.    Paragraph 7C) of the note provides that if I am in default, the lender may send me a notice to pay the overdue amount by a certain date, at least thirty days from the date after which the notice is mailed to me or delivered by other means.

27.    The note provides that if I do not cure the Note Holder may require me to pay immediately the full amount of Principal and all the interest due.

28.    Paragraph 7(E) of the note indicates that if we have been required to pay immediately in full, which is acceleration, we may be required to pay fees and expenses.

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 19 of 62 PageID #: 129

29.     Thus 7(E) provides that fees and expenses may be charged only if the lender has accelerated the note.

30.     The purported default letter did not strictly comply with the note or the mortgage.

31.     It did not tell us that the right to reinstate would terminate five days before any sale date.

32.     It deceptively told us that we owed $103,751.23. However due to miscalculations of Ocwen Loan Servicing, LLC, this amount was not accurate.

33.     It deceptively did not provide us an accurate amount of default and told us we had to contact Ocwen to obtain the actual amount due to reinstate not cure the default.

34.     This letter deceptively told us about fees and expenses which would be required to reinstate after acceleration.

35.     However the note had not been accelerated on April 30, 2018 and there was no basis for discussing costs to reinstate in this letter.

36.     When Ocwen claims to have accelerated the note on October 22, 2018 in Exhibit D, Ocwen's attorney, Orlans deceptively told us, contrary to the terms of the mortgage, that:

You may have the right to reinstate the Mortgage Loan . . .

Any right you may have to reinstate your Mortgage Loan

37.   Neither of these letters strictly complied with the terms of the mortgage.

38.   A   Notice of Foreclosure Counseling was not provided to us pursuant to R.I.G.L. § 34-27-3.1 at least 45 days prior to this initiation of the foreclosure sale on December 30, 2021 by mailing this Notice of Sale.

39.   R.I.G.L § 34-27-3.1 states:

### § 34-27-3.1. Foreclosure counseling.

(a) No less than forty-five (45) days prior to initiating **any foreclosure** of real estate pursuant to subsection 34-27-4(b), the **mortgagee shall provide to an individual consumer mortgagor** written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other

7

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 21 of 62 PageID #: 131

information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

40.   The statute provides that failure to provide us this notice at least forty five days before initiating any foreclosure by mailing a Notice of Sale will render the sale void.

41.   Orlans on behalf of PHH and Deutsche Bank had mailed us a previous Notice of Sale dated June 28, 2021 scheduling a sale for August 19, 2021.

8

37.     While we had been provided a Notice of Foreclosure Counseling prior to that sale, we were never provided a Notice of Foreclosure counseling in regard to this Notice of Sale at least 45 days prior to December 28, 2021.

39.     The failure of Deutsche Bank to strictly comply with the terms of the note and mortgage and R.I.G.L 34-27-3.1 renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability to conduct this foreclosure.

40.     We have  a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

41.     The failure of the Defendants to comply with the terms of the mortgage and note and R.I.G.L 34-27-3.1 renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability or the contractual ability  to exercise the statutory power of sale

42.     We  live in this property, as our principal residence.

ed in Kent County Superior Court
omitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

43.     We emailed a complete loss mitigation application to PHH as per its prior requests on January 21, 2022, which was more than thirty nine days prior to the purported sale date of March 1, 2022.

44.     12 CFR 1024.41 provides that the loan servicer must consider us for review of a loss mitigation application if it receives a complete application at least 37 days prior a sale date.

45.     PHH advertised this purported sale after it received our complete loss mitigation application.

46.     These facts demonstrate that we have a substantial likelihood of success. Likewise a foreclosure of our property by a party not entitled to foreclose on the property will cause us irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants.

47.     Such relief sought by us will not disserve the public interest if imposed.

48.     We have a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

49.     Notice of this affidavit has been provided to Orlans by our attorney.

50.     We are requesting this Court to restrain and enjoin Deutsche Bank,

PHH and any entity acting on their behalf from conducting a foreclosure sale

on our home.


RAYMOND C. BRADBURY


Subscribed and sworn to before me this 2/ day of February, 2022


NOTARY PUBLIC



ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

# EXHIBIT 1-A

ed in Kent County Superior Court
bmitted: 2/22/2022 3:52 PM
velope: 3501017
viewer: Rhiannon W.



## ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)
BRADBURY

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 9, 2005                           PROVIDENCE                      Rhode Island
       [Date]                            [City]                            [State]
61 LAFAYETTE STREET, WEST WARWICK, RI 02893

[Property Address]

**1.      BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 164,800.00            (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   WMC MORTGAGE CORP.

.  I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.      INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  5.950  %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.      PAYMENTS**

    (A)      Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st    day of each month beginning on August 1, 2005
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  July 1, 2035            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at      6501 IRVINE CENTER DRIVE, IRVINE, CA 92618

or at a different place if required by the Note Holder.

    (B)      Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 901.01          . This amount may change.

    (C)      Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**

    (A)      Change Dates

The interest rate I will pay may change on the first day of  July, 2007          , and may change on that day every  6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

    (B)      The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

ed in Kent County Superior Court 2:22-cv-00116   Document 1-4   Filed 03/23/22   Page 27 of 62 PageID #: 137
bmitted: 2/22/2022 4:44 PM E12-bk-12104   Claim 3-1   Filed 08/21/12   Desc Main Document   Page 27 of 29
velope: 3501017
viewer: Rhiannon W.

 

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C)    **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six** percentage point(s) ( 6.000   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)    **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   8.950   % or less than **5.950**   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) (1.000   %) from the rate of interest I have been paying for the preceding  6   months. My interest rate will never be greater than  12.450   %, or less than **5.950**   %.

(E)    **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)    **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)    **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)    **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)    **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

ed in Kent County Superior Court
bmitted: 2/22/2022 3:13 PM Case 1:12-bk-12104 Claim 3-1 Filed 08/21/12 Desc Main Document Page 28 of 29
velope: 3501017
viewer: Rhiannon W.

 

**(D)     No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)     Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.     WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.     UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

ed in Kent County Superior Court
bmitted: 2/22/2022 3:58 PM
velope: 3501017
viewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 29 of 62 PageID #: 139
Case 1:12-bk-12104   Claim 3-1   Filed 08/21/12   Desc Main Document   Page 29 of 29



If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
Borrower - RAYMOND C BRADBURY - Date

_____
Borrower - HEATHER A BRADBURY - Date

Pay to the order of

without recourse

Monica Silva, Asst. Sect.
WMC Mortgage Corp.

[Sign Original Only]

ed in Kent County Superior Court
bmitted: 2/22/2026 42 PM Case 1:18-cv-00690-WES-PAS Document 1-4 Filed 02/22/2018 Page 1 of 62 PageID #: 21
velope: 3501017
viewer: Rhiannon W.

# EXHIBIT A

ed in Kent County Superior Court
bmitted: 2/22/2022 42 PM CV-00690-WES-PAS Document 1-1 Filed 12/21/18 Page 2 of 19 PageID #: 22
velope: 3501017
viewer: Rhiannon W.

After Recording Return To:
EMC MORTGAGE CORP, - POST
CLOSING

1 RAMLAND RD

ORANGEBURG, NY 10962

Attn:    (Equity Services)

Prepared By:
LUZMI VALZ

EMC MORTGAGE CORP.

6320 CANOGA AVENUE 10TH FL
(HALLMARK)

WOODLAND HILLS, CA 91367

[Space Above This Line For Recording Data]

Serv

## MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section
16.

(A) "Security Instrument" means this document, which is dated     June 5, 2005                together with
all Riders to this document.
(B) "Borrower" is    RAYMOND C BRADBURY AND HEATHER A BRADBURY

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is     EMC MORTGAGE CORP.

Lender is a   Corporation;                                      organized and existing under the laws of
CALIFORNIA.                                         Lender's address is   P.O. BOX 54089 LOS
ANGELES , CA 90054-0089
(E) "Note" means the promissory note signed by Borrower and dated     June 5, 2005
The Note states that Borrower owes Lender

llars (U.S. $                 ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than    July 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3840   1/01 (rev. 11/02)
RISLMTG1.FRM  04/05/2005                        (Page 1 of 13 pages)

GERTIFIED COPY OF ORIGINAL

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/22/2023 4:21PM
velope: 3501017
viewer: Rhiannon W.

Case 1:23-cv-00190-WES-PAS Document 1-4 Filed 02/23/23 Page 3 of 62 PageID #:
Case 1:18-cv-00690-WES-PAS Document 1 Filed 12/21/18 Page 3 of 119 PageID #: 23

11121626

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

- [x] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] 1-4 Family Rider
- [x] Other(s) [specify]  Balloon Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY                                    of        KENT
    (Type of Recording Jurisdiction)              (Name of Recording Jurisdiction)
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS EXHIBIT "A".

which currently has the address of     61 LAFAYETTE STREET
                                                [Street]
WEST WARWICK                    , Rhode Island  02893        ("Property Address");
        [City]                              [Zip Code]

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3040  1/01 (rev. 11/00)
DOCUSGG
DOCUPGX.VTX  06/28/2000                        (Page 2 of 15 pages)

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/2... Case 1:16-cv-00690-WES-PAS Document 1-4 Filed 12/21/16 Page 4 of 99 PageID #: 24
velope: 3501017
viewer: Rhiannon W.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3040   1/01 (rev. 11/01)

0003489

0003489.vtt 04/44/2000     (Page 3 of 13 pages)

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/22/2022 ...
velope: 3501017
viewer: Rhiannon W.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3040  1/01 (rev. 11/02)
DOCUKIL
DOCUKIL (Page 4 of 13 pages)

**CERTIFIED**
**TRUE COPY**

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security

RHODE ISLAND—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**  Form 3040  1/01 (rev. 11/02)
DOCUKU (Page 5 of 13 pages)

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/24/2020 ... Case 1:19-cv-00690-WES-PAS Document 1-4 Filed 12/2/19/18 Page 7 of 19 PageID #: 27
velope: 3501017
viewer: Rhiannon W.

would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.      Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.      Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.      Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.      Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3040   1/01 (rev. 11/03)
DOCRRM                                    (Page 6 of 13 pages)
DOCRRM.VTX   04/07/2004

CERTIFIED
TRUE COPY

ed in Kent County Superior Court...
bmitted: 2/22... Case 1:18-cv-00690-WES-PAS Document 1-4 Filed 03/23/22 Page 37 of 62 PageID #: 147
envelope: 3501017
viewer: Rhiannon W.
Case 1:18-cv-00690-WES-PAS Document 1-1 Filed 12/21/18 Page 8 of 19 PageID #: 28

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/2...
velope: 3501017
viewer: Rhiannon W...

Case 1:18-cv-00690-WES-PAS Document 1-4 Filed 12/12/18 Page 9 of 19 PageID #: 29

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3040 1/01 (rev. 11/02)
DOCUKRI         (Page 8 of 13 pages)
DOCUKRI.VTX  04/04/2004

**CERTIFIED TRUE COPY**

ed in Kent County Superior Court
bmitted: 2/2/2022 1:45... Case 1:25-cv-00690-WES-PAS Document 1-4 Filed 03/12/21... Page 10 of 9 PageID #: 30
velope: 3501017
viewer: Rhiannon W.

**13.** **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.** **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.** **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.** **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOC#XXX
DOC#XXX...FED - 04/04/2008
(Page 9 of 13 pages)

Form 3040   1/01 (rev. 11/01)

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/2...
velope: 3501017
viewer: Rhiannon W.

Case 1:18-cv-00600-WES-PAS Document 14 Filed 05/23/18 Page 21 of 61 PageID #: 31

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/2...
CV-00690-WES-PAS Document 1-4 Filed 03/23/22 Page 4 of 62 PageID #: 151
Document 1-1 Filed 12/21/18 Page 12 of 19 PageID #: 32
velope: 3501017
viewer: Rhiannon W.

purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3040   1/01 (rev. 1/03)
(Page 11 of 13 pages)
DOCUKI...
DOCUKI.VTC   04/04/2004

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/2...
velope: 3501017
viewer: Rhiannon W.

Case 1:19-cv-00690-WES-PAS Document 1-4 Filed 03/23/21 Page 13 of 19 PageID #: 33

**24.** No Outstanding Automatic Orders in Domestic Relations Cases. Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25.** Homestead Estate. If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument and the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefit of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BORROWER - BARRERO (BRRADDURY) - Date

_____ (Seal)
BORROWER (HEATHER A BRADBURY) - Date

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/23/22 1:24 PM CV-00690-WES-PAS   Document 1-1   Filed 12/21/18   Page 14 of 19 PageID #: 34
velope: 3501017
viewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 43 of 62 PageID #: 153

11222620    [Space Below This Line For Acknowledgment]    11222620

STATE OF Rhode Island , COUNTY OF Providence

In Providence in said County on the 9th day of
This 2013 personally appeared

RAYMOND C. GARDINER & NESTRELA A. GARDINER

each and all to me known, and known by me to be the party(ies) executing the foregoing instrument, and
Acknowledged said instrument, by THEM executed by THEM free act and deed.

_____
Notary Public

My Commission Expires:

NOTARY PUBLIC
RONALD R. WARR,
MY COMMISSION EXPIRES

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3040   1/01 (rev. 11/03)
DOCUKI13 (Page 13 of 13 pages)
DOCUKI13.VTX  04/04/2001

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/2/2022 12:34...
velope: 3501017
viewer: Rhiannon W.

### ADJUSTABLE RATE RIDER
#### (6-Month LIBOR Index - Rate Caps)
#### (First Business Day of Preceding Month Lookback)

THIS ADJUSTABLE RATE RIDER is made this 9th day of June, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to MMC MORTGAGE CORP.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
**1 LAFAYETTE STREET, WEST WARWICK, RI 02893**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
    The Note provides for an initial interest rate of    5.950  %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (A)  Change Dates
    The interest rate I will pay may change on the first day of July, 2007 and may change on that day every   6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
DOC#0301
DOC#0301.VTX 07/12/2004
Page 1 of 3





ed in Kent County Superior Court
bmitted: 2/... Case 1:21-cv-00690-WES-PAS Document 1-4 Filed 05/12/21 Page 16 of 19 PageID #: 36
velope: 3501017
viewer: Rhiannon W.

(B)    The Index

Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Six                                                                     percentage point(s)
( 6.000    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.950   % or less than  5.950  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One
percentage point(s) ( 1.000    %) from the rate of interest I have been paying for the preceding
6            months. My interest rate will never be greater than 12.450   %, or less than 5.950   %.

(E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)—Single Family—
00010000                                                                 Page 2 of 3
00010000_VER. 08/04/2014

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/2...
velope: 3501017
viewer: Rhiannon W.

Case 1:18-cv-00690-WES-PAS   Document 1-4   Filed 03/22/21   Page 46 of 62 PageID #: 37



which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____  _____
- Borrower - JARMOD C BRADBURY -  Date -

_____  _____
- Borrower - RHIANNON A BRADBURY -  Date -

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
SOBR000X                               Page 3 of 3
000862R .VEK  01/03/2004

CERTIFIED
TRUE COPY

ed in Kent County Superior Court,
bmitted: 2/... Case 1:23-cv-00690-WES-PAS Document 14 Filed 03/22/21 Page 18 of 19 PageID #: 38
velope: 3501017
viewer: Rhiannon W.

[Space Above This Line For Recording Data



## BALLOON RIDER

THIS BALLOON RIDER is made this 9th day of June, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
61 LAFAYETTE STREET WEST WARWICK, RI 02893

[Property Address]

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

BALLOON RIDER-MULTISTATE (5/97)
DOC#8501
DOC#8502. VOI. 07/22/2004                                    Page 1 of 2

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/2/2022 Case 1:21-cv-00690-WES-PAS Document 1-4 Filed 03/23/22 Page 19 of 19 PageID #: 39
velope: 3501017
viewer: Rhiannon W. 

## EXHIBIT A - LEGAL DESCRIPTION

That certain tract or parcel of land with all improvements thereon, located on Lafayette Street in the Town of West Warwick, Rhode Island, the same being more specifically described as follows:

PARCEL I:

Beginning at a point on the easterly line of Lafayette Street, which said point is the northwesterly corner of the parcel herein conveyed and the southwesterly corner of Lot #57 as shown on that certain recorded plat entitled "Central park Terrace by Frank E. Waterman, March 1904 scale 80 ft. per inch" which said recorded plat is recorded at Book 5, page 45 of the Land Evidence Records of the City of Warwick, Rhode Island and copied on Card #164 of the Land Evidence Records of the Town of West Warwick, Rhode Island; thence running southwesterly bounded westerly by the easterly line of Lafayette Street twenty-five (25) feet; thence turning and running easterly on a line twenty-five (25) feet from and parallel to the southerly line of aforesaid Lot #57 to the westerly line of Lot #28 as shown on said recorded plat; thence turning and running northeasterly bounded easterly by the westerly line of said Lot # 28 for a distance of twenty-five (25) feet; thence turning and running northwesterly bounded northeasterly by the southerly line of aforesaid Lot #57.

Meaning and intending to convey and herewith conveying the northerly twenty-five (25) feet by the entire depth of said Lot #56 as shown on aforesaid Central Park Terrace Plat.

PARCEL II:

Those two certain lots or parcel of land with any improvements thereon, situated in the Town of West Warwick, Rhode Island, laid out and designated as lots fifty-seven (57) and fifty-eight (58) on Plan of Central Park Terrace, made by Frank Waterman, C.E. dated March, 1904, which plat is recorded in the Land Records of the City of Warwick, Rhode Island in Plat Book 4, page 45.

Stewart Title Guaranty Company

CERTIFIED
TRUE COPY

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Brian Box

P.O. Box 5041
Troy, MI 48007-5041



USPS CERTIFIED MAIL

9214 8901 9403 8300 0062 7081 34

Raymond C. Bradbury AKA Raymond Bradbury,
c/o John B. Ennis, Esq.,
1200 Reservoir Avenue,
Cranston, RI 02920

**File:  18-014287**

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

# ORLANS PC

A law firm licensed in

DC, DE, FL, MA, MD, MI, NH, PA, RI, VA

PO Box 540540
Waltham, MA 02454
P (781) 790-7800  F (781) 790-7l
www.Orlans.com
Business Hours: 8:30 AM – 5:00 l

**IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY AS TO THIS OBLIGATION, THIS COMMUNICATION IS INTENDED FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT IN VIOLATION OF THE AUTOMATIC STAY OR THE DISCHARGE INJUNCTION. IN SUCH CASE, PLEASE DISREGARD ANY PART OF THIS COMMUNICATION WHICH IS INCONSISTENT WITH THE FOREGOING.**

**OTHERWISE, THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO THE BENEFITS OF THE SERVICEMEMBERS' CIVIL RELIEF ACT.**

December 30, 2021

CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Raymond C. Bradbury AKA Raymond Bradbury,
c/o John B. Ennis, Esq.,
1200 Reservoir Avenue,
Cranston, RI 02920

RE :    61 Lafayette Street, West Warwick, RI 02893
        Our File Number: 18-014287

## NOTICE OF INTENTION TO FORECLOSE AND OF DEFICIENCY AFTER FORECLOSURE OF MORTGAGE

Dear Raymond C. Bradbury AKA Raymond Bradbury, :

      The Borrower is hereby notified, in accordance with the statute, of our intention, on or after March 1, 2022 to foreclose under power of sale for breach of condition, and by entry, that certain mortgage ("Mortgage") held by the undersigned covering the premises known and numbered as 61 Lafayette Street, West Warwick, RI dated June 9, 2005 and recorded with the Town of West Warwick Land Evidence Records at Book 1609, Page 286, to secure a note or other obligation signed by you, for the whole, or part, of which you may be liable to the undersigned in the case of a deficiency in the proceeds of the foreclosure sale.

      A copy of the foreclosure advertisement is enclosed.

                    Very truly yours,
                    Deutsche Bank National Trust Company, as Trustee for
                    GSAMP Trust 2005-WMC1
                    By its Attorneys,
                    ORLANS PC

Enclosure

18-014287/189/NOTOL

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

## NOTICE TO SERVICE MEMBERS

**A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.**

R.I. Gen. Law § 34-27-4(d) Foreclosure sales affecting servicemembers.-

(1) The following definitins shall appy to this subsection and to subsection (c):
  (i) "Servicemember" means a member of the army, navy, air force, marine corps, or coastguard and members of the national guard or reserves called to active duty.
  (ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the national guard, or reserves "active duty" means and includes service under a call to active service authorized by the president or the secretary of defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the president and supported by federal funds.

(2) This subsection applies only to an obligation on real and related personal property owned by a servicemember that:
  (iii) Originated before the period of the servicemember's military service or in the case of a member of the national guard or reserves originated before being called into active duty and for which the servicemember is still obligated; and
  (iv) Is secured by a mortgage or other security in the nature of a mortgage.

(3) Stay of right to foreclose by mortgagee – Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within one year* of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such one year* period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

(4) Stay of proceedings and adjustment of obligation – In the event a mortgagee proceeds with foreclosure of the property during, or within one year* after a servicemember's period of active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her

18-014287/189/NOTOL

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 52 of 62 PageID #: 162

authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

    (v) Stay the proceedings for a period of time as justice and equity require;or

    (vi)Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) Sale or foreclosure - A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within one year* after, the period of the servicemember's military service except:

    (vii) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

    (viii) If made pursuant to an agreement of all parties.

(6) Penalties - A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearing on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

[*as of February 2, 2013, Section 710 of H.R. 1627 (2012) extended the protections of the SCRA from "9 months" to "one year" following the end of active duty]

**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

    ORLANS PC
    Attorney for the Present Holder of the Mortgage
    PO Box 540540
    Waltham, MA 02454
    Phone: (781) 790-7800
    18-014287

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 53 of 62 PageID #: 163

## MORTGAGEE'S NOTICE OF SALE OF REAL ESTATE

### 61 LAFAYETTE STREET, WEST WARWICK, RI 02893

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on March 1, 2022 at 11:00 AM on the premises, by virtue of the power of sale contained in a mortgage by Raymond C. Bradbury and Heather A. Bradbury dated June 9, 2005 and recorded with the Town of West Warwick Land Evidence Records at Book 1609, Page 286, the conditions of said mortgage having been broken.

### TERMS OF SALE:

A deposit of FIVE THOUSAND DOLLARS AND 00 CENTS ($5,000.00) in the form of a certified check, bank treasurer's check, or money order will be required to be delivered at or before the time the bid is offered. The description of the premises contained in said mortgage shall control in the event of an error in this publication. Other terms will be announced at the sale.

> ORLANS PC
> Attorney for the Present Holder of the Mortgage
> PO Box 540540
> Waltham, MA 02454
> Phone: (781) 790-7800
> 18-014287

18-014287/189/NOTOL

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501047
viewer: Rhiannon W.

1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 54 of 62 PageID #: 164

# NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

**Housing counseling services are available to you at no cost.** Counseling services that can help you understand your options and provide resources and referrals that may assist you in preventing foreclosure are available from mortgage counseling agencies approved by the United States Department of Housing and Urban Development (HUD). You can locate a HUD-approved mortgage counseling agency by calling HUD's toll-free telephone number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov. The TDD number is 1-800-877-8339. You can also directly contact one of the Rhode Island HUD-approved counseling agencies listed below. Foreclosure prevention counseling services are available free of charge through HUD's Housing Counseling Program.

## HUD Approved Housing Counseling Agencies in Rhode Island as of 11/03/2010

| | |
|---|---|
| Blackstone Valley Community Action Program, Inc. 32 Goff Avenue, Pawtucket, RI 02860-2929 Phone: (401) 723-4520 www.bvcap.org | CommunityWorksRI 693 Broad Street, Providence, RI 02907 Phone: (401) 273-2330 www.communityworksri.org |
| NeighborWorks Blackstone River Valley 719 Front Street, Suite 103, Woonsocket, RI 02895 Phone: (401) 762-0074 www.wndc.org | Money Management International Warwick 501 Centerville Road, 2nd Floor, Warwick, RI 02886 Phone: (800) 308-2227 www.moneymanagement.org |
| The Urban League of Rhode Island 246 Prairie Avenue, Providence, RI 02905 Phone: (401) 351-5000 www.ulri.org | West Elmwood Housing Development Corp. 392 Cranston Street, Providence, RI 02907 Phone: (401) 453-3220 www.wehdc.org |
| Stop Wasting Abandoned Property 439 Pine Street, Providence, Rhode Island 02907 Phone: (401)272-0526 www.swapinc.org | Olneyville Housing Corporation 66 Chaffee Street, Providence, RI 02909 Phone: (401) 351-8719 www.olneyville.org |
| Providence Housing Authority 100 Broad Street, Providence, RI 02903 Phone: (401) 709-6400 www.pha-providence.com | Rhode Island Housing 44 Washington Street, Providence, RI 02903 Phone: (401) 457-1130 www.rhodeislandhousing.org |
| The Housing Network of Rhode Island 1070 Main Street, Pawtucket, RI 02860 Phone: (401) 521-1461 www.housingnetworkri.org | Coventry Housing Associates Corporation 14 Manchester Circle, Coventry, RI 02816 Phone: (401) 828-4367 www.coventryhouse.org |

18-014287/189/NOTOL

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

1:22-cv-00116   Document 1-4   Filed 03/23/22   Page 55 of 62 PageID #: 165

## NOTIFICACION DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACION HIPOTECARIA

**Se encuentran a disposicion servicios de orientacion sobre vivienda sin costo adicional.** Los servicios de orientacion pueden ayudarle a comprender las opciones de las que dispone, asi como tambien ofrecerle recursos y referencias que podrian contribuir a evitar la ejecucion de la hipoteca. Dichos servicios los ofrecen agencias de orientacion hipotecaria aprobadas por el *United States Department of Housing andUrban Development* (Departamento de Vivienda y Desarrollo Urbano de EE.UU., HUD, por sus siglas en ingles). Puede localizar agencias de orientacion hipotecaria aprobadas por HUD llamando al numero gratuito de dicho departamento al 1-800-569-4287, o ingresando a la pagina en Internet de HUD www.hud.gov. El numero del dispositivo de comunicacion para sordos (TDD, por sus siglas en ingles) es1-800-877-8339. Asimismo, puede comunicarse directamente con una de las agencias de orientacionde Rhode Island aprobadas por HUD que se indican abajo. Los servicios de orientacion para prevenir la ejecucion de hipotecas se ofrecen sin costa alguno mediante el Programa de Orientacion para la Vivienda de HUD.

Agencias de Orientacion para la Vivienda de Rhode Island aprobadas por HUD hasta la fecha 11/03/2010

| | |
|---|---|
| Blackstone Valley Community Action Program, Inc 32 Goff Avenue, Pawtucket, RI 02860-2929 Phone: (401) 723-4520 **www.bvcap.org** | CommunityWorksRI 693 Broad Street, Providence, RI 02907 Phone: (401) 273-2330 **www.communityworksri.org** |
| NeighborWorks Blackstone River Valley 719 Front Street, Suite 103, Woonsocket, RI 02895 Phone: (401) 762-0074 **www.wndc.org** | Money Management International Warwick 501 Centerville Road, 2nd Floor, Warwick, RI 02886 Phone: (800) 308-2227 **www.moneymanagement.org** |
| The Urban League of Rhode Island 246 Prairie Avenue, Providence, RI 02905 Phone: (401) 351-5000 **www.ulri.org** | West Elmwood Housing Development Corp. 392 Cranston Street, Providence, RI 02907 Phone: (401) 453-3220 **www.wehdc.org** |
| Stop Wasting Abandoned Property 439 Pine Street, Providence, Rhode Island 02907 Phone: (401)272-0526 **www.swapinc.org** | Olneyville Housing Corporation 66 Chaffee Street, Providence, RI 02909 Phone: (401) 351-8719 **www.olneyville.org** |
| Providence Housing Authority 100 Broad Street, Providence, RI 02903 Phone: (401) 709-6400 **www.pha-providence.com** | Rhode Island Housing 44 Washington Street, Providence, RI 02903 Phone: (401) 457-1130 **www.rhodeislandhousing.org** |
| The Housing Network of Rhode Island 1070 Main Street, Pawtucket, RI 02860 Phone: (401) 521-1461 **www.housingnetworkri.org** | Coventry Housing Associates Corporation 14 Manchester Circle, Coventry, RI 02816 Phone: (401) 828-4367 **www.coventryhouse.org** |

18-014287/189/NOTOL

ed in Kent County Superior Court
bmitted: 2/22/2022 1:42 PM
velope: 3501017
viewer: Rhiannon W.

1:22-cv-00116    Document 1-4    Filed 03/23/22    Page 56 of 62 PageID #: 166

CERTIFIED MAIL

USPS CERTIFIED MAIL

9214 8901 9403 8300 0062 7081 34

P.O. Box 5041
Troy, MI 48007-5041

Raymond C. Bradbury AKA Raymond Bradbury,
c/o John B. Ennis, Esq.,
1200 Reservoir Avenue,
Cranston, RI 02920

OCWEN

161 Washington Rest, Suite 100

*Helping Homeowners is What We Do!®*

www.ocwen.com

Toll Free: 800.746.2936

04/30/2018

Sent Via First Class Mail
2332 0952 97
Loan Number: 7092479760

Raymond C Bradbury
61 LAFAYETTE ST
WEST WARWICK, RI 02893-1803

Property Address: 61 Lafayette St
West Warwick, RI 02893-1803

## NOTICE OF DEFAULT

### AVISO IMPORTANTE PARA PERSONAS QUE HABLAN ESPAÑOL:

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received an Order of Discharge in a Chapter 7 case filed under the Bankruptcy Code of the United States, this notice is not intended as an attempt to collect any debt from you personally. If you have received an Order of Discharge in a Chapter 11, 12 or 13 bankruptcy case, this notice is not an attempt to collect a pre-petition debt pursuant to a completed and confirmed Bankruptcy Plan. If the foregoing applies to you, this notice is sent to you only as a preliminary step to an "In Rem" foreclosure on the Mortgage against the above-referenced "Property." Provisions may be contained within the Mortgage/Deed of Trust that requires notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt contrary to any entered Bankruptcy Order of Discharge.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because we have not been notified of your bankruptcy case. If the foregoing applies to you, it is IMPORTANT that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

DEMANDO5BKDCM

NMLS # 1852

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1 of 4



Filed in Kent County Special Civil
Submitted 02/22/2022 2:40 PM **00116** Document 1-4 Filed 03/23/22 Page 58 of 62 PageID #: 100
Envelope: 3501017
Reviewer: Rhiannon W.

www.ocwen.com                     West Palm Beach, FL 33409
*Helping Homeowners is What We Do!*      Toll Free: 800.746.2936

Mortgage payments on the above-referenced account are past due, which has caused a default under the terms of the Mortgage or Deed of Trust (hereinafter, "Security Instrument"). As of 04/30/2018, the following amounts are past due:

| | |
|---|---|
| Principal and Interest | $70,730.20 |
| Interest Arrearage | $0.00 |
| Escrow | $33,252.53 |
| Late Charges | $52.01 |
| Insufficient Funds Charges | $0.00 |
| Fees / Expenses | $13.06 |
| Suspense Balance (CREDIT) | $296.58 |
| Interest Reserve Balance (CREDIT) | $0.00 |
| TOTAL DUE | $103,751.22 |

In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 06/06/2018, at the address listed on page four of this notice. Payment must be received via MoneyGram, bank check, money order or certified funds. Please be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement. In addition to the overdue amount on the mortgage account. Any payment to reinstate the Mortgage after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the Mortgage will be returned and will not stop any foreclosure proceedings already begun on the Property.
PRIOR TO SUBMITTING A PAYMENT, PLEASE CALL US TO VERIFY THE EXACT AMOUNT PAST DUE ON THE ACCOUNT.

Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. A customer has the right to reinstate the account after acceleration and the right to bring a court action assert the non-existence of a default or any other defense to acceleration and sale.

If the default is not cured on or before the date specified above, Ocwen Loan Servicing LLC ("Ocwen"), at its option may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Ocwen shall be entitled to collect all expenses incurred in pursuing the remedies provided under applicable law, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Ocwen invokes the STATUTORY POWER OF SALE, Ocwen shall mail a copy of a notice of sale to the customer and to other persons in a manner prescribed by applicable law.

NMLS # 1852                                           DEMAND005BKD

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Filed in Kent County Superior Court
Submitted: 3/22/2022 2:24 PM
Envelope: 3501017
Reviewer: Rhiannon W.

Case 1:22-cv-00116   Document 1-4   Filed 03/29/22   Page 59 of 62   PageID #: 169

www.ocwen.com
*Helping Homeowners is What We Do!*
West Palm Beach, FL 33409
Toll Free: 800.746.2936

We will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release information once written authorization has been obtained, as required by law.

In addition, a U.S. Department of Housing and Urban Development ("HUD") counseling agency may be able to provide assistance. To locate the HUD-approved counseling agency, call the HUD Housing Counseling Service at 800.569.4287 or consult HUD's website at www.HUD.gov.

**Attention Servicemembers and Dependents:** Servicemembers on "active duty" or "active service," or a spouse or dependent of such a service member, may be entitled to certain legal protections under the federal Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-597b) ("SCRA") regarding the service member's interest rate and foreclosure protections. SCRA and certain state laws provide important protections for you. If you are currently in the military service, or have been within the last twelve (12) months, please notify OCWEN immediately. Servicemembers and dependents with questions about SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php. Military OneSource is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under SCRA, please go to www.militaryonesource.mil/legal or call 800.342.9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website. Homeowner counseling is also available at HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also contact us toll-free at 800.746.2936.

If the mortgage account cannot be brought current, we should be contacted immediately to discuss possible alternatives to foreclosure. We want to help remedy the delinquent status of this account and would like to discuss alternatives that might be available. While our primary objective is the collection of past due amounts on the account, we want to work to find the best available alternative to bring the account current.

Please visit our website at www.ocwencustomers.com where the account can be reviewed and financial information entered.

For any questions or concerns, we can be reached toll-free at 800.746.2936. We are available Monday through Friday 8 am to 9 pm and Saturday 8 am to 5 pm ET.

Inder Somwani has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,
Loan Servicing
Toll Free Phone: 800.746.2936

ADDRESS WRITTEN CORRESPONDENCE TO:
Ocwen Loan Servicing, LLC
Attention: Research Department
P.O. Box 24736
West Palm Beach, FL 33416-4736

DEMANDO5BKDCW

NMLS # 1852
This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



Filed in Kent County Superior Court
Submitted: 3/22/2021 2:47 PM
Envelope: 3501017
Reviewer: Rhiannon W.

OCWEN
Helping Homeowners is What We Do℠

www.ocwen.com
West Palm Beach, FL 33409
Toll Free: 800.746.2936

## PAYMENT REMITTANCE INFORMATION
### (Always include the account number 7092479760 with any payment)

Certified Payment Methods

| Western Union | MoneyGram |
|---|---|
| Code City: OCWEN<br>State: Florida<br>Reference: Account Number 7092479760<br>Agent Locator: 800.225.5227 | Receiver Code: 2355<br>Payable to: Ocwen Loan Servicing, LLC<br>City, State: Orlando, Florida<br>Reference: Account Number 7092479760<br>Agent Locator: 800.926.9400 |

| Mail a Money Order/Certified Check | Bank Wire |
|---|---|
| For Regular Mail:<br>Ocwen Loan Servicing, LLC<br>P.O. Box 660264<br>Dallas, TX 75266-0264<br>For Overnight/Certified Mail:<br>Ocwen Loan Servicing, LLC<br>Box # 660264<br>1010 W. Mockingbird Lane, Suite 100<br>Dallas, TX 75247 | Bank: Wells Fargo Bank, NA<br>Ocwen Bank ABA Routing Number: 121000248<br>Ocwen Bank Account Number: 4124823352<br>Account Name: Ocwen Loan Servicing, LLC<br>Reference: Account Number 7092479760<br>Property Address and Customer Name<br>Email Wire Details to:<br>Transferfunds@ocwen.com |

DEMAND055KDCM

NMLS # 1852

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

Page 4 of 4

ORLANS PC
A law firm licensed in

DC, DE, MA, MD, MI, NH, RI, VA

Waltham, MA 02454
P (781) 790-7800  F (781) 790-7801
www.Orlans.com
Business Hours: 8:30 AM – 5:00 PM ET

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.

IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.

October 22, 2018

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED and FIRST CLASS MAIL
Raymond C. Bradbury
61 Lafayette Street
West Warwick, RI 02893

RE: Our File Number: 18-014287
   Property Address: 61 Lafayette Street, West Warwick, RI 02893

Dear Raymond C. Bradbury:

This law firm has been retained by Ocwen Loan Servicing LLC regarding the mortgage which encumbers the above real property (the "Mortgage"). The Note evidencing the loan in the original principal amount of $164,800.00 and the Mortgage are collectively called the "Mortgage Loan."

According to the records of our client, your Mortgage Loan is in default. As a result, the Mortgage Loan has been accelerated and Ocwen Loan Servicing LLC has referred the matter to our office for further action. Please see the following page for a statement of the amount owed and important additional information.

You may have the right to reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (781) 790-7800.

Any right you may have to reinstate your Mortgage Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the following page of this notice.

Very truly yours,
Orlans PC

18-014287/-/189/FDCAL

Filed in Kent County Superior Court
Submitted: 5/22/2022 2:44 PM
Envelope: 3501017
Reviewer: Rhiannon W.

Case 1:22-cv-00116 Document 1-14 Filed 03/23/22 Page 62 of 62 PageID #: 172

NOTICE TO THE DEFENDANT
15 USC §1692

1. The amount of debt as of October 18, 2018 is $244,247.61.

2. Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above. Please contact Ocwen Loan Servicing LLC or Orlans PC at (781) 790-7800 to obtain an updated payoff amount.

3. The name of the creditor to whom the debt is owed is Deutsche Bank National Trust Company, as Trustee for GSAMP Trust 2005-WMC1.

4. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Orlans PC.

5. If you notify Orlans PC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Orlans PC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment, and any other information required by applicable law, will be mailed to you by Orlans PC; and

6. Upon your written request within the thirty day period, Orlans PC will provide you with the name and address of the original creditor, if different from the current creditor.

18-014287/189/FDCAL